UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRACEY H.,[1]

                                                 Plaintiff,         Case # 20-CV-159-FPG

v.                                                                     DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                 Defendant.
_____

## INTRODUCTION

Plaintiff Tracey H. protectively applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") on or about June 13, 2016, alleging disability beginning March 14, 2016. Tr.[2] 58-60. After the Social Security Administration ("SSA") denied her claim, Tr. 59-66, 83-84, Plaintiff appeared, with counsel, at a hearing on October 30, 2018, before Administrative Law Judge Timothy Belford (the "ALJ"). Tr. 30-57. At the hearing, Plaintiff amended her claim to a closed period from March 14, 2016 to April 14, 2017. Tr. 33. On December 19, 2018, the ALJ issued an unfavorable decision. Tr. 16-24. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 5, 8. Plaintiff filed a reply. ECF No. 9. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED. The ALJ's decision is AFFIRMED.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

1

**LEGAL STANDARD**

**I.     District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.    Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in gainful activity from March 14, 2016, the alleged onset date, to April 14, 2017. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety and depression. Tr. 18.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 19-20. Next, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff can only complete simple, routine tasks, with only occasional decision-making and workplace changes, and Plaintiff can have no more than occasional interaction with co-workers, supervisors, or the public. Tr. 20.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work. Tr. 22. At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform—such as a price marker, mail sorter, and hand packager—and therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 22-24.

### II. Analysis

Plaintiff argues that the ALJ's RFC with respect to Plaintiff's mental health limitations was not supported by substantial evidence because the ALJ gave only "partial weight" to the only mental health opinion in the record. ECF No. 5-1 at 10-15. The Court disagrees.

It is well-established that an ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusions need not "perfectly correspond with any of the opinions of

medical sources cited in [the ALJ's] decision." *Id.* But an ALJ "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quoting another source). "[A]s a result [,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Id.*

Here, the only mental health opinion evidence in the record is from A. Dipelou, M.D., the state agency reviewer. Dr. Dipelou concluded that Plaintiff's mental health impairments were non-severe and did not cause any limitations in daily living activities. Tr. 63-64. In accordance with the principles described above, the ALJ considered that opinion and gave it only "partial weight" because Dr. Dipelou did not have access to Plaintiff's full medical record and did not examine her. Tr. 22. The ALJ went on to include in the RFC several non-exertional restrictions—such as a limitation to completing simple, routine tasks with occasional decision-making, and having occasional interaction with others—based on the remaining evidence in the record, which demonstrated that Plaintiff had some mental health limitations. Tr. 22.

Contrary to Dr. Dipelou's opinion, the record supports the ALJ's conclusion that Plaintiff has *some* mental health limitations—especially when dealing with others and concentrating—due to her anxiety and depression, both of which were exacerbated by Plaintiff's marital issues. Tr. 504-18 (describing Plaintiff's anxiety and depression), 37-38 (Plaintiff's testimony regarding marital issues and stress). Plaintiff, a teacher, described feeling panicky entering a classroom full of students, and reported problems concentrating and thinking while working. Tr. 37-38. But much of the record shows that Plaintiff displayed mostly normal mental status examinations and that Plaintiff's anxiety and depression were managed by medication. Tr. 468, 472, 474, 476, 478, 480, 532, 534, 536, 538, 540, 542, 544, 546, 548, 550, 552, 554, 556, 558, 560. Moreover, Plaintiff reported that she participated in a host of social activities, such as going to the gym, seeing friends,

doing yoga, attending a divorce support group, volunteering at her daughter's school, shopping, traveling, and going to happy hour, albeit with some difficulties in crowds. Tr. 52, 474, 485, 506, 510, 516, 560. Accordingly, the ALJ did not base the RFC on his untrained view of the raw medical data. Rather, it was based on Plaintiff's documented and self-described functional limitations in dealing with stress and anxiety. *See Dey v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 386, 392 (W.D.N.Y. 2019) ("Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's limitations, the ALJ may not rely on the record in determining the plaintiff's RFC."). The RFC limiting Plaintiff to occasional interactions with others and simple, routine work, accounts for these limitations, while acknowledging Plaintiff's self-described ability to engage with others in certain situations.

Plaintiff makes a series of related, confusing, and meritless arguments in support of remand. ECF No. 5-1 at 10-15. First, Plaintiff argues that, in giving only "partial weight" to the only opinion evidence in the record, the ALJ improperly substituted his lay opinion for the judgment of a medical provider. Plaintiff cites cases standing for the proposition that the ALJ cannot typically make specific, "common sense judgments" regarding mental health limitations in the absence of opinion evidence supporting those limitations, because mental health limitations are "highly complex and individualized." *Lilley v. Berryhill*, 307 F. Supp. 3d 147, 161 (W.D.N.Y. 2018); *see Dye v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 386, 392-93 (W.D.N.Y. 2019) (remanding where ALJ rendered RFC without any opinion evidence); *Kiggins v. Comm'r of Soc. Sec.*, 17-CV-6642, 2019 WL 1384590, at *5 (W.D.N.Y. Mar. 27, 2019) (remanding where ALJ rejected treating physician's opinion regarding mental health limitations and developed an RFC that permitted plaintiff to engage in more expansive activities than the opinion would have allowed). But those cases are distinguishable. In each, the ALJ either failed to consider an opinion from a mental

health professional or discounted an opinion from a mental health professional in favor of less stringent limitations.  This case presents the reverse scenario.  Here, the ALJ discounted—but did not reject entirely—the only mental health opinion in the record and concluded that Plaintiff was *more* limited than the opinion would have allowed.

Second, Plaintiff argues that in discounting the only medical opinion in the record, the ALJ created an evidentiary gap that needed to be filled with a functional assessment.  ECF No. 5-1 at 14.  Even assuming that there was a gap in the record, Plaintiff claims a period of disability that closed over a year before the hearing.  It would therefore be difficult—if not impossible—for the ALJ to obtain an examiner's opinion regarding Plaintiff's mental functioning *during* the closed period *after* that period had closed.   Therefore, the ALJ's failure to obtain such an opinion was not error.  See *Ramona R. v. Saul*, No. 19-CV-1630F, 2021 WL 732694, at *5 (W.D.N.Y. Feb. 25, 2021) (discussing with skepticism an opinion from a consultative examiner "well after the closed period for which Plaintiff seeks disability benefits"); *see also McNally v. Comm'r of Soc. Sec.*, No. 14-CV-76, 2015 WL 3621437, at *13 (N.D.N.Y. June 9, 2015) (stating that ALJ properly afforded little weight to consultative examiner's opinion rendered years after the relevant time period).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings, ECF No. 5, is DENIED, the Commissioner's motion for judgment on the pleadings, ECF No. 8, is GRANTED.  The ALJ's decision is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 22, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York